# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

MICHAEL J. MARTIN,

                Petitioner,         :     Case No. 3:19-cv-042

     - vs -                           District Judge Walter H. Rice
                                        Magistrate Judge Michael R. Merz

WARDEN,
  London Correctional Institution

                                       :

                Respondent.

## REPORT AND RECOMMENDATIONS

Petitioner Michael J. Martin brings this action *pro se* pursuant to 28 U.S.C. § 2254 to obtain relief from his conviction in the Montgomery County, Ohio, Court of Common Pleas for murder and associated firearms offenses for which he is serving a sentence of thirty years to life in Respondent's custody (Petition, ECF No. 3, PageID 21).

The case is before the Court for initial review pursuant to Rule 4 of the Rules Governing § 2254 Cases which provides that the clerk must promptly forward the petition to a judge under the court's assignment procedure, and the judge must promptly examine it. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. Upon filing the case was randomly assigned to United States District Judge Walter H. Rise and automatically referred to the undersigned under the Dayton location of court's General Order of Assignment and Reference (Day 13-01).

1

Petitioner pleads the following grounds for relief:

> **Ground One:** Improper Jury Instructions from the Trial Court
>
> **Supporting Facts:** The Defendant asserted the Castle Doctrine defense and not self-defense. The trial court purposely mislead [sic] the jury with the jury that Defendant had a duty to retreat.
>
> **Ground Two:** Defendant-Appellant was denied effective assistance of trial counsel.
>
> **Supporting Facts:** Trial counsel failed to object to the trial court & jury instruction under the Castle Doctrine [Ohio Revised Code §] 2906.05(B). Cross-examination of Miss Busbee and other areas of examination was deficient.
>
> **Ground Three:** Defendant['s] conviction was against the manifest weight of the evidence in violation of the U.S. Constitution.
>
> **Supporting Facts:** The Defendant established through testimony the Castle Doctrine under Ohio Revised Code § 2906.05(B) and was therefore not liable for his action concerning the shooting of Mr. Tisdale.

(Petition, ECF No. 3, PageID 25, 26, and 28.)

On April 6, 2016, Martin was indicted by a Montgomery County, Ohio, grand jury

> on two counts of felony murder, four counts of felonious assault, and one count of discharging a firearm at or near a prohibited premises (over a public road); each of these counts included a firearm specification and a specification for discharging a firearm from a motor vehicle. Martin was also charged with improper handling of a firearm in a motor vehicle and having weapons under disability. The counts of murder and two of the counts of felonious assault related to the shooting of Gary Lamar Tisdale, Jr.; the two additional counts of felonious assault related to Elbert Soles and Ellis McMillin.

*State v. Martin*, 2nd Dist. Montgomery No. 27220, 2017-Ohio-7431 (Sept. 1, 2017), appellate jurisdiction declined, 151 Ohio St.3d 1514 (2018). After trial, conviction, and appropriate merger of some of the offenses, he was sentenced as set forth above. He then appealed to the Ohio Second

District Court of Appeals which affirmed the convictions. *Id.* The Ohio Supreme Court declined to review the case, and Martin timely filed his Petition in this Court.

The testimony at trial was strongly conflicted, but relates to events of March 26, 2016, when Martin was sitting in his car with Lisa Busbee in front of a house at which she was staying. Busbee had formerly been in a sexual relationship with Gary Tisdale. Tisdale and two others drove by the parked car. Tisdale made a U-turn, parked along side Martin's car, alighted, and went to the passenger side where he had words with Martin about staying away from Busbee, whom he referred to as "my girl." Martin shot Tisdale through the sun roof of his car. Tisdale was able to return to his own car and drive off, but died a short distance away.

# Analysis

**Ground One: Erroneous Jury Instructions**

In his First Ground for Relief, Martin claims the jury instructions on the Castle Doctrine and self-defense were erroneous and misleading. He raised this claim on direct appeal as his First Assignment of Error and the Second District decided it as follows:

> *Jury Instructions*
>
> **{¶ 38}** In his first assignment of error, Martin contends that the jury instructions were incomplete, inaccurate, and misleading with respect to the "castle doctrine" and the duty to retreat before acting in self-defense. At oral argument, Martin's appellate counsel stated, somewhat more specifically, that the manner or order in which the jury instructions on self-defense were given created confusion.

3

**{¶ 39}** In Ohio, self-defense has three elements: 1) the defendant did not create the violent situation, 2) the defendant had a bona fide belief that he was in danger of death or great bodily harm and that the only way to escape was the use of force, and 3) that the defendant did not violate any duty to retreat. *State v. Williford*, 49 Ohio St.3d 247, 551 N.E.2d 1279 (1990). The castle doctrine, on which Martin's defense relied, relates to the applicability of the duty to retreat.

**{¶ 40}** The castle doctrine takes its name from the maxim that a person's home is his or her "castle." *State v. Waller*, 2d Dist. Clark No. 2013-CA-26, 2014-Ohio-237, ¶ 40, citing *State v. Comer*, 4th Dist. Gallia No. 10CA15, 2012-Ohio-2261, ¶ 11, and 4 Blackstone, Commentaries on the Laws of England (Rev. Ed.1979) 223, Chapter 16. The castle doctrine is now codified in R.C. 2901.09(B):

> For purposes of any section of the Revised Code that sets forth a criminal offense, a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence, and a person who lawfully is an occupant of that person's vehicle or who lawfully is an occupant in a vehicle owned by an immediate family member of the person has no duty to retreat before using force in self-defense or defense of another.

**{¶ 41}** The castle doctrine does not stand for the proposition — as Martin suggests --that he does not have the burden of proof on self-defense. [footnote omitted] Rather, it sets forth circumstances in which he is not required to retreat, which relates to only one of the elements of self-defense. In other words, the castle doctrine creates a rebuttable presumption in his favor on this one element of self-defense. On the other elements — that the defendant did not create the situation that gave rise to his use of force, and that he had reasonable grounds to believe, and an honest belief, that such force as he used was necessary to protect himself — the defendant still bears the burden of proof. See *State v. Dale*, 2d Dist. Champaign No. 2012 CA 20, 2013-Ohio-2229, ¶ 18, citing *State v. Westfall*, 9th Dist. Lorain No. 10CA009825, 2011-Ohio-5011, ¶ 19 and *State v. Bushner*, 9th Dist. Summit No. 26532, 2012-Ohio-5996, ¶ 16.

**{¶ 42}** The trial court's instructions on self-defense extended over 5 pages of the transcript. They included, among other things, that 1) the defendant has the burden of proof on an affirmative defense, including self-defense, by the preponderance of the evidence; 2) the elements of self-defense and of the duty to retreat; 3) how to

> determine whether the defendant (Martin) had reasonable grounds to believe and an honest belief that he or Busbee was in imminent or immediate danger of death or great bodily harm; 4) the circumstances in which a duty to retreat no longer applies; and 5) the castle doctrine, as it applies to a vehicle. These instructions tracked the Ohio Jury Instructions on self-defense against the danger of death or great bodily harm, the test for reasonableness in self-defense or defense of another, and the presumptions related to self-defense or defense of another in a residence or vehicle (the castle doctrine). *See* 2 Ohio Jury Instructions 421.19, 421.23, and 421.24. The instructions also made clear that, even if the defendant fails to establish an affirmative defense, the State must prove all of the elements of the charged offenses beyond a reasonable doubt.
>
> **{¶ 43}** After extensive discussions, all of the instructions that Martin requested related to the castle doctrine and defense of another were given. There were also extensive discussions about the manner in which the instructions were to be given, and defense counsel indicated his satisfaction with how these issues were resolved before the proposed instructions were given. The trial court made a diligent effort to provide and did provide all of the relevant instructions to the jury. Factual questions existed --for the jury to decide --about whether the facts supported the application of the castle doctrine and/or whether all of the elements of self-defense had been established; these questions necessitated a complex set of jury instructions, because the relevant instructions were dependent on the jury's findings with respect to the circumstances surrounding the shooting. We reject Martin's argument that the court jury instructions on self-defense and the castle doctrine were incomplete, inaccurate, or misleading. Moreover, counsel did not object to the instructions that were given, and we find no plain error, as we cannot find that the jury instructions on self-defense contained any obvious defect or affected Martin's substantial rights.

*Martin*, 2017-Ohio-7431.

Based on the Second District's decision, the Magistrate Judge concludes Martin's First Ground for Relief should be dismissed for a number of reasons. First of all, the jury instructions were not erroneous. The question of what elements are included in a crime or in a defense to a crime is a matter of state, not federal, law. On questions of what the relevant state law is, a federal habeas corpus court is bound by the decisions of the state courts. *Bradshaw v. Richey*, 546 U.S.

5

74, 76 (2005) (per curiam). In this case, the Second District authoritatively interpreted Ohio law and applied it to the facts before it; this Court is bound by that interpretation of Ohio law.

Second, this claim is procedurally defaulted because Martin's trial attorney did not object to the instructions and the manner in which they were given, thereby waiving all but plain error, which the Second District did not find. Ohio law requires a contemporaneous objection in the trial court to trial court error when it is made so that the trial court can correct it. Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998) — is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012). An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Id.* at 337; *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001).

Third, because federal habeas review is limited to federal constitutional claims, Ground One does not state a claim for relief since there is no constitutional command about the content of self-defense instructions, including the Castle Doctrine.

**Ground Two: Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Martin asserts he received ineffective assistance of trial counsel when his attorney failed to object to the jury instructions, in his cross-examination of Miss

Busbee, and in other ways.

This claim was presented to the Second District on direct appeal which decided the claim as follows:

> *Ineffective Assistance of Counsel*
>
> **{¶ 45}** In his second assignment of error, Martin argues that he was denied the effective assistance of counsel during the cross-examination of Busbee and his own direct examination, because counsel did not ask certain questions which might have bolstered Martin's claim of self-defense. He also contends that counsel's handling of the jury instructions and of certain testimony about someone who allegedly fled from the scene of the shooting denied him the effective assistance of counsel.
>
> **{¶ 46}** We review alleged instances of ineffective assistance of trial counsel under the two-pronged analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688.
>
> **{¶ 47}** To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. *See id.*; *Bradley* at 142. A debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Fields*, 2017-Ohio-400, 84 N.E.3d 193, ¶ 38 (2d Dist.).
>
> **{¶ 48}** With respect to the cross-examination of Busbee, Martin asserts that counsel failed to ask more direct and specific questions about whether he (Martin) had acted to defend Busbee, and therefore failed to "fully establish" his self-defense or defense of another claim. This assertion assumes that Busbee would have answered the questions in a manner that supported Martin's theory of the case. However, Busbee had testified on direct examination that Tisdale was not acting in a threatening manner and was not armed when he approached the car. Her testimony in the State's case also did not support Martin's testimony that she had been fearful, "screaming,"

7

or "hollering" when Tisdale approached; she simply stated that she had not unlocked the door because she did not want "drama" between the two men. Defense counsel could have reasonably doubted that Busbee would answer direct questions about whether Martin had been defending her in a manner that would be helpful to the defense, and there is nothing in the record indicating that such responses were likely. As such, we cannot find that he acted ineffectively in failing to ask such questions.

{¶ 49} Martin also argues that defense counsel failed to "establish a key point"" during Martin's direct examination: that he was acting to protect himself or Busbee. We disagree. Martin's version of events, as established through his direct examination, was that Tisdale had approached the car with a gun, that Busbee had expressed fear of Tisdale, that Tisdale had been angry, and that Tisdale had opened the car door. This testimony supported Martin's theory of the case: that he had acted in self-defense and/or defense of Busbee. We cannot find that any additional or formulaic questions by defense counsel about whether Martin was defending himself or Busbee would have been answered in a certain fashion, were required, or would have affected the outcome of the case.

{¶ 50} Martin also contends that a particular section of the transcript during Soles's testimony created "some question" about the presence of an "unknown individual" in Tisdale's vehicle during the purchase of marijuana, who allegedly "fled" and was "never questioned by police." During the cited testimony (Tr. 289), Tisdale's brother, Soles, makes reference to a "guy named Bama," whom Soles had never met before and whose real name was unknown to him at that time. However, it is clear from the transcript as a whole that "Bama" was McMillin. McMillin testified at trial that his nickname was "Bama," that he had been with Tisdale and Soles prior to the shooting, and that they had purchased marijuana. There was nothing in Soles's testimony to suggest in any way that a person fled from the scene of the shooting and was never identified and questioned by the police. This record simply does not support any plausible argument that trial counsel acted ineffectively in failing to identify another witness.

{¶ 51} Finally, Martin contends that trial counsel was ineffective in his handling of and failure to object to the jury instructions on self-defense. As we discussed under the first assignment of error, trial counsel was very engaged with the trial court during the formulation of the jury instructions, and the instructions that were given were proper and reasonably clear. We find no ineffective assistance related to the jury instructions.

*Martin*, 2017-Ohio-7431.

Unlike the jury instruction claim in Ground One, ineffective assistance of trial counsel is a federal constitutional claim: the Sixth Amendment guarantees a criminal defendant that he will receive the effective assistance of counsel and a violation of that guarantee can result in habeas relief. However, when a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. ' 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

In this case the Second District applied the correct federal constitutional standard for ineffective assistance of trial counsel as adopted in *Strickland v. Washington*, 466 U.S. 668 (1984). Moreover, the application is objectively reasonable. Because the jury instructions were not erroneous, it cannot have been deficient performance to fail to object to them. Martin plainly hoped that Busbee's testimony would be more favorable to his defense, but there is nothing to indicate different examination from trial counsel would have elicited better answers.

Because the Second District's application of Strickland was objectively reasonable, it is entitled to deference under 28 U.S.C. § 2254(d)(1). Ground Two should therefore be dismissed.

**Ground Three: Manifest Weight of the Evidence**

In his Third Ground for Relief, Martin asserts his conviction is against the manifest weight of the evidence.

9

This Ground for Relief does not state a claim upon which habeas corpus relief can be granted. The Constitution does not prohibit conviction of a person against the manifest weight of the evidence. *Johnson v. Havener*, 534 F.2d 1232, 1234 (6th Cir. 1986). The Constitution does prohibit a conviction if there is insufficient evidence – not enough evidence to persuade a jury beyond a reasonable doubt on one or more elements. But the evidence as summarized by the Second District is clearly sufficient. If the jury had believed Martin's testimony, he would have been acquitted, because he was in his own car and he testified that he though Tisdale had a gun. But there was ample eyewitness testimony to the contrary which the jury was entitled to believe.

Therefore, the Third Ground for Relief should be dismissed.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

February 14, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party=s objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).